394

VIEREG, Appellant, vs. SOUTHWESTERN WISCONSIN GAS COMPANY, Respondent.

*May 10—September 12, 1933.*

For the appellant there was a brief by *R. M. Rieser,* attorney, and *Olin & Butler* of counsel, all of Madison, and oral argument by *Mr. Rieser.*

For the respondent there was a brief by *Nash & Nash,* attorneys, and *A. F. Rankin* of counsel, all of Manitowoc, and oral argument by *Mr. Rankin.*

The following opinion was filed June 6, 1933:

FOWLER, J.  In a memorandum decision filed on setting aside the verdict and directing judgment of dismissal the trial judge states:

"Such evidence as was introduced in behalf of this claim comes far from meeting the requirements of the law, as to entitle plaintiff to a judgment he must satisfy the jury *and the court* by a fair preponderance of the evidence."

The law does not require that the evidence shall satisfy the trial judge.  If reasonable minds may differ as to the conclusions of ultimate fact to be drawn from the evidence, the verdict of the jury must be upheld whether the evidence satisfies the trial judge as to the correctness of the jury's conclusions or not.  This matter was recently so fully discussed in *Trautmann v. Charles Schefft & Sons Co.* 201 Wis. 113, 228 N. W. 741, that there is no occasion for discussion of it herein.  The trial judge may grant a new trial in the interests of justice if from the weakness of the evidence or other matters occurring upon the trial he considers that entering judgment on the verdict would result in a miscarriage of justice.  But he is not a trier of the facts, and may not usurp the functions of the jury.  There was no motion

for a new trial in the interests of justice in the instant case and the trial judge did not grant relief from the verdict on such ground, as he doubtless might have done on his own initiative had he deemed the situation required such action.

However, it does not follow that dismissal of the action was erroneous merely because it was based upon an erroneous ground. If the evidence was such that reasonable minds could not draw therefrom conclusions of ultimate fact such as to support the verdict, the dismissal of the complaint was right regardless of the erroneous reason therefor given by the trial judge. We must therefore determine whether the conclusions of fact reached by the jury might reasonably be drawn from the evidence.

It appears without dispute that prior to January, 1931, the plaintiff had been receiving $500 a month salary as "manager" of the defendant company's plants, and that his salary was reduced to $400 and he was paid that amount for the month of January. He is designated on the November, December, and January rolls as a permanent employee. Early in February he received a letter from Mr. Gifford, the president of the defendant company, which contained the statement:

"It is absolutely necessary that we be relieved of your salary for the month of February. I think by March we can start it going again."

This seems to have been considered by the court as an absolute dismissal of the plaintiff from the defendant's service. We are of opinion that it cannot be so considered in view of the plaintiff's testimony as to his subsequent interview and arrangement with Gifford. He testified that the subsequent arrangement was that he should stay on the job until the finances of the company were straightened out; that in the meantime he should be paid his expenses; that he would be paid his salary when the contemplated financing

was completed; and that under this arrangement he continued to occupy the same desk and to do the same work that he had theretofore occupied and done. Vouchers are in evidence showing that his expenses were paid by the defendant during the months of March, April, May, and June, and in July to July 10th, and show on their face that during these months he was visiting the plants of the defendant and of the parent company of which the defendant is a subsidiary, as he had done theretofore. These vouchers thus corroborate his claim that he remained in defendant's employment. The plaintiff also testified that the president of the company during this period gave him checks amounting to $200 to apply on his salary account, and this is not disputed although it does not appear that the checks were those of the defendant company or that the amounts thereof were charged by the president to the defendant company. The plaintiff also testified that on July 10th, the last date on which any items appear on his expense account with the defendant, he quit to go after another job, and that after failing to secure it he again went to work for the defendant at $150 a month as manager of its Tomah and Sparta plants only. He continued in this capacity until Gifford resigned as president of the company about April 1, 1932, when he was immediately discharged by Gifford's successor, and he testifies that he then first learned that the defendant disputed his claim for salary up to July 10th. He also testified that he frequently requested Gifford for payment of his back salary, that Gifford never denied liability of the company, and that as late as March, 1932, he was assured by Gifford that he would be paid as soon as certain properties were sold.

The evidence relied on by the defendant to defeat the claim is the fact that his name did not appear upon the payroll after January, and Gifford's testimony that plaintiff agreed to keep on at certain company work without salary

and be paid his expenses when on such work, and that two witnesses testified that plaintiff told them he was out, which he denied. As between the plaintiff and Gifford and the other witnesses it was for the jury to judge as to their comparative credibility. Leaving plaintiff off the payroll is not necessarily inconsistent with his alleged agreement with Gifford, as monthly payrolls are ordinarily made up to show payments for the current month, and the plaintiff testified they were so made up by the defendant company.

It seems clear that upon the whole evidence the jury were warranted in returning the verdict for the plaintiff, and that judgment should have been entered thereon for the plaintiff.

*By the Court.*—The judgment of the circuit court is reversed, with directions to enter judgment for the plaintiff upon the verdict.

A motion for a rehearing was denied, with $25 costs, on September 12, 1933.